UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW CARL FULDA,

      Petitioner,

v.

      Case No. 3:23-cv-271-BJD-SJH
      3:21-cr-112-BJD-SJH

UNITED STATES OF AMERICA,

      Respondent.

_____

## **ORDER**

## **I. STATUS**

Petitioner Andrew Carl Fulda (Fulda), a former federal inmate,[1] is proceeding on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Motion; Civ. Doc. 1; Crim. Doc. 47[2]). The Government filed a Response in Opposition to the Motion (Response; Civ. Doc. 5). Petitioner filed a Reply to the Response (Reply; Civ. Doc. 18) and a Supplemental Memorandum of Law (Doc. 21). Upon review, the Court finds that an evidentiary hearing is not warranted pursuant to 28 U.S.C. § 2255 and

---

[1] Fulda was released from custody on September 25, 2023, but is still serving the supervised release portion of his sentence. *See* Civ. Doc. 13; Civ. Doc. 25 at 1.

[2] Citations to the record in the civil case will be denoted as "Civ. Doc. __," and citations to the record in the underlying criminal case will be denoted as "Crim. Doc. __."

Rule 8(a) of the Rules Governing § 2255 Proceedings.[3]

## II. PROCEDURAL HISTORY

On October 6, 2021, a federal grand jury indicted Fulda for possession of firearms on September 23, 2021 by a person subject to a domestic violence injunction,[4] in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2) (count one), and possession of firearms not registered to Fulda in the National Firearms Registration and Transfer Record (NFRTR) on September 23, 2021, in violation of 26 U.S.C. §§ 5861(d) and 5871 (count two). Crim. Doc. 14. On November 16, 2021, Fulda pled guilty to count one under a plea agreement, pursuant to which Fulda agreed to waive his right to appeal his sentence, and the Government agreed to move to dismiss count two of the indictment. *See* Crim. Docs. 24, 26–27, 29, 48.

On February 23, 2022, this Court adjudicated Fulda guilty as to count one, dismissed count two, and sentenced Fulda to a 37-month term of

---

[3] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a motion under § 2255. However, "[t]he district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a § 2255 movant is not entitled to an evidentiary hearing "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citations omitted)).

[4] The injunction was issued on or about April 14, 2020 and was in effect until October 14, 2021. *See* Crim. Doc. 26 at 23–25.

imprisonment followed by a three-year term of supervised release. Crim. Doc. 37. Consistent with his plea agreement, Fulda did not appeal. On March 7, 2023, he timely filed the present Motion in this Court. Civ. Doc. 1 at 14; Crim. Doc. 47 at 14.

### III.  LEGAL STANDARDS

A person in federal custody may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In short, only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. *United States v. Addonizio*, 442 U.S. 178, 184–85 (1979). The movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017) (collecting cases).

"[A] defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234–35 (11th Cir. 2004). "This rule generally applies to all claims,

including constitutional claims." *Id.* However, the Supreme Court has held that the procedural default rule does not apply to ineffective assistance of counsel claims. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

To avoid a procedural bar, a petitioner "must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error," or he must demonstrate he "is actually innocent." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). The ineffective assistance of counsel may satisfy the "cause" prong of the first exception, but the claim must be a valid one. *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002) ("A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel . . . ."). Under the second exception—actual innocence—a petitioner must demonstrate his factual innocence and "show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## IV. DISCUSSION

Fulda's Motion raises four grounds for relief. *See* Civ. Doc. 1; Crim. Doc. 47. However, in his Reply, Fulda abandons Grounds Two, Three, and Four,

4

leaving only Ground One for the Court's consideration. *See* Civ. Doc. 18 at 1. As Ground One, Fulda alleges that in light of the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022),[5] Fulda's conviction and sentence must be vacated as unconstitutional under the Second Amendment and laws of the United States. Civ. Doc. 1 at 4; Crim. Doc. 47 at 4. Fulda concedes that his claim in Ground One is procedurally defaulted, and that the default cannot be excused by the cause and prejudice exception. Civ. Doc. 18 at 4. Fulda argues, however, that he is actually innocent because the statute under which he was convicted—18 U.S.C. § 922(g)(8)—is facially unconstitutional under *Bruen* in light of the Fifth Circuit's decision in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). *See* Civ. Doc. 18 at 3–5. Fulda explains:

> If 18 U.S.C. § 922(g)(8) is, as Fulda argues[,] a "charge . . . which the [Government] may not constitutionally prosecute," . . . then this is a classic case of actual innocence. A defendant is actually innocent of a conviction under a statute which is facially unconstitutional.
>
> Fulda rests on the opinion and holding in *Rahimi* for his argument that 18 U.S.C. § 922(g) is facially unconstitutional. If the Supreme Court affirms the Fifth Circuit in *Rahimi*, then Fulda's petition must be granted.

---

[5] In *Bruen*, the Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. *Bruen* found that the state of New York's licensing regime was unconstitutional because it "issue[d] public-carry licenses only when an applicant demonstrate[d] a special need for self-defense." *Id.* at 11.

Civ. Doc. 18 at 4–5 (footnote omitted).

Fulda cannot establish actual innocence to overcome the procedural default. As an initial matter, the Fifth Circuit's decision on which Fulda relies is not binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). Moreover, the Fifth Circuit's *Rahimi* decision was recently reversed by the Supreme Court. *See United States v. Rahimi*, 602 U.S. 680 (2024). The Supreme Court addressed the facial challenge[6] to 18 U.S.C. § 922(g)(8), and concluded that "Section 922(g)(8) survives Rahimi's challenge." 602 U.S. at 693. The Supreme Court stated:

> When a restraining order contains a finding that an individual poses a credible threat to the physical safety of an intimate partner, that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect. Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms. As applied to the facts of this case, Section 922(g)(8) fits comfortably within this tradition.

602 U.S. at 690. The Supreme Court explained:

> A prosecution under Section 922(g)(8) may proceed only if three criteria are met. First, the defendant must have received actual

---

[6] A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *Rahimi*, 602 U.S. at 693. "That means that to prevail, the Government need only demonstrate that Section 922(g)(8) is constitutional in some of its applications." *Id.*

6

notice and an opportunity to be heard before the order was entered. § 922(g)(8)(A). Second, the order must prohibit the defendant from either "harassing, stalking, or threatening" his "intimate partner" or his or his partner's child, or "engaging in other conduct that would place [the] partner in reasonable fear of bodily injury" to the partner or child. § 922(g)(8)(B). A defendant's "intimate partner[s]" include his spouse or any former spouse, the parent of his child, and anyone with whom he cohabitates or has cohabitated. § 921(a)(32). Third, under Section 922(g)(8)(C), the order must either contain a finding that the defendant "represents a credible threat to the physical safety" of his intimate partner or his or his partner's child, § 922(g)(8)(C)(i), or "by its terms explicitly prohibit[] the use," attempted use, or threatened use of "physical force" against those individuals, § 922(g)(8)(C)(ii).

602 U.S. at 688.

Fulda does not dispute that the domestic violence injunction against him satisfies the first and the second elements of 18 U.S.C. § 922(g)(8). *See* Civ. Doc. 21. As stated in the "Factual Basis" for the plea agreement:

Florida court records reflect that on March 31, 2020, a person with the initials A.M.F, who is Fulda's estranged wife, filed a Petition for Injunction naming Fulda as the respondent. Fulda and A.M.F. were married on September 12, 2015, and have one minor child in common. Florida court records also reflect that on April 14, 2020, a Final Judgment of Injunction for Protection Against Domestic Violence with Minor Child(ren) (After Notice) (the "Final Injunction") was issued on April 14, 2020. The Final Injunction described that the Petitioner was A.M.F. and the respondent was Fulda and that the Final Injunction had been issued by a Florida state court after a hearing was conducted, which both A.M.F. and Fulda had attended, along with their respective counsel, via Zoom. The Final Injunction further stated that a notice of the hearing as well as a copy of the Petition for Injunction had been served on Fulda on April 3, 2020, in accordance with Florida law, and that Fulda "was afforded an opportunity to be heard." The Final Injunction reflected that Florida state court's finding "that [A.M.F.] is a victim of domestic violence or has reasonable cause to

7

believe that he/she is in imminent danger of becoming a victim of domestic violence by [Fulda]." The Final Injunction's terms stated that it "shall be in full force and effect until . . . October 14, 2021." The Final Injunction commanded that[:]

> [Fulda] shall not commit, or cause any other person to commit, any acts of domestic violence against [A.M.F.]. Domestic Violence includes: assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking [sic] kidnapping, false imprisonment, or any other criminal offense resulting in physical injury or death to [A.M.F.] or any of [A.M.F.'s] family or household members. [Fulda] shall not commit any other violation of the injunction through an intentional unlawful threat, word, or act to do violence to [A.M.F.].

The Final Injunction further ordered that "[Fulda] shall surrender any firearms and ammunition in [Fulda's] possession to the Jacksonville Sheriff's Office" and warned "[FULDA] IS ADVISED THAT IT IS A FEDERAL CRIMINAL FELONY OFFENSE TO . . . POSSESS IN OR AFFECTING COMMERCE, ANY FIREARM OR AMMUNITION . . . ." and cited Title 18, United States Code, Section 922(g)(8). Florida court records reflect that on April 3, 2020, Fulda executed an affidavit stating that he did not possess any firearms or ammunition. Florida court records reflect that on April 20, 2020, a Proof of Service was docketed establishing that the Final Injunction had been served on Fulda the same day.

Crim. Doc. 26 at 24–26; *see also* Crim. Doc. 34 at 3, 6, 11.

Fulda asserts, however, that the injunction against him "only included an order prohibiting threatened use of physical force," and "did not include a finding of credible threat" under 18 U.S.C. § 922(g)(8)(C). Civ. Doc. 21 at 2. Fulda essentially argues that because the Supreme Court analyzed only the credible threat provision in 18 U.S.C. § 922(g)(8)(C)(i), and not the threatened

8

use provision in 18 U.S.C. § 922(g)(8)(C)(ii), the Supreme Court did not reverse the Fifth Circuit's decision as to 18 U.S.C. § 922(g)(8)(C)(ii). Civ. Doc. 21 at 2.

The Supreme Court stated that "Section 922(g)(8) provides two independent bases for liability": Section 922(g)(8)(C)(i) and Section 922(g)(8)(C)(ii); and the Supreme Court's "analysis start[ed] and stop[ped] with Section 922(g)(8)(C)(i) because the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 693. The Supreme Court explained:

> Section 922(g)(8) restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do. Unlike the regulation struck down in *Bruen*, Section 922(g)(8) does not broadly restrict arms use by the public generally.
> . . . .
>
> Moreover, like surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi. Section 922(g)(8) only prohibits firearm possession so long as the defendant "is" subject to a restraining order. § 922(g)(8). In Rahimi's case that is one to two years after his release from prison . . . .
>
> Finally, the penalty—another relevant aspect of the burden—also fits within the regulatory tradition. The going armed laws provided for imprisonment . . . , and if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible.
> . . . .
>
> In short, we have no trouble concluding that Section 922(g)(8) survives Rahimi's facial challenge. Our tradition of firearm

regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others. Section 922(g)(8) can be applied lawfully to Rahimi.

602 U.S. at 698–700.

Given the conclusion that Section 922(g)(8) survived Rahimi's facial challenge, the Supreme Court determined that it did not need to "decide whether regulation under Section 922(g)(8)(C)(ii) [was] also permissible." 602 U.S. at 693, 700. However, that does not mean, as Fulda suggests, that this Court must apply the Fifth Circuit's *Rahimi* decision to find Section 922(g)(8) unconstitutional on its face. Again, the Fifth Circuit's decision is not binding on this Court. Moreover, to the extent the Fifth Circuit's decision rested on *Bruen* for its conclusion that Section 922(g)(8) was unconstitutional, the Supreme Court observed that "the Fifth Circuit made two errors":

> First, like the dissent, it read *Bruen* to require a "historical twin" rather than a "historical analogue." 597 U.S. at 30 (emphasis deleted). Second, it did not correctly apply our precedents governing facial challenges. 61 F.4th at 453. As we have said in other contexts, "[w]hen legislation and the Constitution brush up against each other, [a court's] task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). Rather than consider the circumstances in which Section 922(g)(8) was most likely to be constitutional, the panel instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns. *See* 61 F.4th at 459; *id.* at 465–67 (Ho, J., concurring). That error left the panel slaying a straw man.[2]

> > FN2: Many of the potential faults that the Fifth Circuit identifies in Section 922(g)(8) appear to sound in due process rather than the Second Amendment. *E.g.*, 61 F.4th at 459; *id.* at 465–67 (Ho, J., concurring).

10

> As we have explained, unless these hypothetical faults occur in every case, they do not justify invalidating Section 922(g)(8) on its face. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (a facial challenge fails if the law is constitutional in at least some of its applications). . . .

602 U.S. at 701 (internal citations modified).

The Supreme Court also observed that "some courts have misunderstood the methodology of our recent Second Amendment cases" and that "[t]hese precedents were not meant to suggest a law trapped in amber." *Id.* at 691. The Supreme Court reiterated that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition," and central to this inquiry are the questions of "[w]hy and how the regulation burdens the right" to armed self-defense. *Id.* at 692 (citing *Bruen*, 597 U.S. at 26–31). "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 602 U.S. at 692 (citing *Bruen*, 597 U.S. at 30). The Supreme Court found that both the "how" and the "why" metrics were satisfied in *Rahimi*, meaning that Section 922(g)(8) was facially constitutional. *Rahimi*, 602 U.S. at 700.

Further, *Bruen* does not compel a different conclusion in Fulda's case. *Bruen* dealt with the right of "law-abiding" citizens to armed self-defense. *See* 597 U.S. at 29–50, 71 ("New York's proper-cause requirement violates the

11

Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."). As such, *Bruen* distinguished various restrictions, such as those for common-law offenses, statutory prohibitions, and "surety" statutes that required certain individuals (typically, "those threatening to do harm") to post bond before carrying weapons in public, as inapplicable to "the right of the general population" to peaceably carry arms in public. *Id.* at 50–60. In other words, *Bruen* only held that "a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun" for self-defense. *Id.* at 72 (Alito, J., concurring). As Justice Alito's concurring opinion explained:

> That is all we decide. Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *District of Columbia v. Heller*, 554 U.S. 570 (2008) or *McDonald v. Chicago*, 561 U.S. 742 (2010), about restrictions that may be imposed on the possession or carrying of guns.

597 U.S. at 72 (Alito, J., concurring) (internal citations modified).

Based on the foregoing, Fulda cannot established actual innocence as to count one of the indictment to overcome the procedural default of his claim. Even assuming arguendo that he could establish actual innocence as to count one, he must also show actual innocence as to count two of the indictment, which the Government agreed to dismiss as part of the plea agreement. *See*

Crim. Doc. 26 at 3. Fulda concedes that "he must also demonstrate actual innocence [as to] count two." Civ. Doc. 18 at 5; *see also Bousley*, 523 U.S. at 624 (stating that where "the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges"); *United States v. Montano*, 398 F.3d 1276, 1285 (11th Cir. 2005) (same); *United States v. Caso*, 723 F.3d 215, 221–22 (D.C. Cir. 2013) (stating that the "likely rationale for the *Bousley* rule supports requiring petitioners to show their innocence of equally serious charges" as well, even though "its language mentioned only more serious ones"); *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003) (stating that the "logic of the *Bousley* opinion does not require that the charge that was dropped or forgone in the plea negotiations be more serious than the charge to which the petitioner pleaded guilty," but only that "it is as serious"). Nevertheless, Fulda argues that the factual basis for the plea agreement "is not a factual basis" to establish his guilt as to count two. Civ. Doc. 18 at 5–6.

In count two, Fulda was charged with possession of unregistered firearms (a Surefire 7.62 caliber silencer and a Colt 5.56 caliber carbine) in violation of 26 U.S.C. §§ 5861(d) and 5871. *See* Crim. Doc. 14 at 3. It appears that these firearms, along with several others, were also included in the possession charge in count one. *See* Crim. Doc. 14 at 2–5; Crim. Doc. 26 at 8, 22–23. As part of his plea agreement, Fulda stated "under penalty of perjury

that he [was] the sole and rightful owner of [these firearms]." Crim. Doc. 26 at

13–14. Further, Fulda admitted that the facts set forth in the "Factual Basis"

for his plea were "true," and if the case were to go to trial, the Government

"would be able to prove those specific facts and others beyond a reasonable

doubt." *Id.* at 20. The "Factual Basis" for the plea provided in relevant part:

> On September 2, 2021, a special agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received information indicating that [Fulda] was possessing firearms while subject to a domestic violence injunction.
> . . .
>
> The special agent conducted a check of the . . . NFRTR and determined that Fulda had registered multiple firearms silencers. A firearms silencer is a firearm as defined under federal law in 18 U.S.C. § 921(a)(3). The special agent obtained a record of firearms that had been surrendered by Fulda to the Jacksonville Sheriff's Office (JSO) Property Room and determined that Fulda had not surrendered any of his silencers.
>
> The special agent conducted surveillance and determined that Fulda was residing at 12325 Apple Leaf Drive, Jacksonville, Florida 32224, within the Middle District of Florida. The special agent also determined that Fulda had paid a safe moving company to move a Pendleton brand firearms safe to the Apple Leaf Drive residence on April 8, 2021. The special agent applied for, and obtained, a federal search warrant to search the Apple Leaf Drive residence.
>
> On September 23, 2021, the special agent traveled to Fulda's place of business. The special agent encountered Fulda and informed him that ATF wished to discuss a matter with Fulda. Fulda agreed to speak with the agents. The special agent informed Fulda that he had received a tip that Fulda was a prohibited person in possession of firearms and ammunition. Fulda acknowledged that he was subject to a protection order that was set to expire on October 14, 2021. Fulda explained that he was going through a

14

divorce and asked to contact his attorney, which the special agent allowed Fulda to do. Fulda then agreed to answer additional questions. Fulda was shown the affidavit that he had executed on April 3, 2020, and caused to be filed in state court as part of the domestic violence injunction, in which Fulda attested that he did not possess firearms or ammunition. Fulda acknowledged that was his affidavit. The special agent also showed Fulda an inventory of items that he had turned into the JSO Property Room, and Fulda confirmed he had surrendered those items and claimed that he did not possess any other firearms or ammunition. The special agent also asked Fulda whether he was familiar with items regulated by the National Firearms Act (NFA), and Fulda stated that he was. *Fulda acknowledged to the special agent that he had registered firearms silencers in the NFRTR as required by the NFA and admitted that he had not surrendered his silencers to the JSO Property Room. Fulda claimed to have given the silencers to a friend. Fulda then provided an address of 4750 Seascape Way, Apartment 308, Jacksonville, Florida, as his residence, and claimed it was his only residence. Fulda also claimed to have sold his Pendleton brand firearms safe.* After this discussion, the special agent informed Fulda that it is a federal crime to lie to a federal agent, and Fulda stated he understood. *The special agent then informed Fulda that the agent had conducted surveillance at the Apple Leaf Drive residence and believed Fuda to reside there. The special agent also informed Fulda that his investigation had revealed that Fulda had moved his Pendleton brand firearms safe to the Apple Leaf Drive residence.* Fulda then invoked his right to counsel.

The special agent then traveled to the Apple Leaf Drive residence, where other agents were in the process of executing the federal search warrant. Special agents executing the warrant had interviewed Fulda's paramour, a person with the initials A.P., who stated that Fulda paid her a monthly fee to rent a storage room at the Apple Leaf Drive residence. A.P. stated that she did not have access to the storage room and agents observed that the door was secured with a keyed lock. *Inside of the storage room, agents located Fulda's Pendleton brand firearms safe.* Fulda, after consulting with his attorney, agreed to provide agents with the combination to his Pendleton brand firearms safe. *Inside of the safe, were multiple handguns as well as packaging for a Surefire*

15

*brand silencer. Inside of the packaging was a Surefire 7.62 caliber silencer that had been registered in the NFRTR to a person with the initials D.S. No paperwork has been filed to transfer possession of the Surefire 7.62 caliber silencer registered to D.S. into Fulda's possession. On the floor of the storage room was a Colt 5.56 caliber carbine with a barrel measuring approximately 10.5 inches, which is a short-barreled rifle as defined in 26 U.S.C. § 5845(a)(3), and which had not been registered in the NFRTR.*

Crim. Doc. 26 at 24, 26–29 (emphasis added).

Based on the foregoing, there was adequate factual basis to establish Fulda's guilt for the charge of possession of unregistered firearms. As such, Fulda cannot establish actual innocence as to count two of the indictment. Further, as stated previously, Fulda cannot establish actual innocence as to count one. Therefore, Ground One of Fulda's Motion must be denied.[7]

## V.  CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1.      The Motion (Civ. Doc. 1; Crim. Doc. 47) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** is directed to enter judgment denying the Motion and dismissing this action with prejudice, to terminate any pending motions, and to close the file.

---

[7] As stated earlier, Fulda abandoned Grounds Two, Three, and Four of his Motion, *see* Civ. Doc. 18 at 1; therefore, these grounds are denied as moot.

3.      If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[8] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of March, 2026.

_____

BRIAN J. DAVIS
United States District Judge

Jax-11 3/16
c:
Counsel of Record

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.